UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **RICHARD KASAINE, ET AL** | **CIVIL DOCKET NO. 3:23-cv-00914** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **SAMUEL OPOKU, ET AL** | **MAGISTRATE JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM RULING

Before the Court is a MOTION FOR SUMMARY JUDGMENT (the "Motion") filed by Defendants Samuel Opoku and Western Express, Inc. (hereinafter, "Defendants"). [Doc. 62]. Plaintiffs Richard Kasaine and Nzilani Mutanga (collectively, "Plaintiffs") filed an Opposition on August 21, 2025, to which Defendants filed a Reply on August 25, 2025. [Doc. 68]; [Doc. 71]. The parties then filed supplemental briefing at the direction of the Court. [Docs. 73, 74, 76]. For the following reasons, the Motion is DENIED as moot.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This lawsuit arises from an incident between two commercial truck drivers that occurred on October 26, 2022, in the parking lot of a rest area off of I-20 in Lincoln Parish, Louisiana. [Doc. 1-1, ¶ 2]. Defendant, Samuel Opoku ("Opoku"), was operating an 18-wheer pulling a flatbed trailer between parked vehicles at the speed of approximately 5 miles per hour. [Doc. 62-1, p. 1]. As Opoku began to turn left, the left rear tire of his trailer struck the right front corner of one of the Plaintiffs, Richard

Kasaine's ("Kasaine"), 18-wheeler. [*Id.*]; [Doc. 1-1, ¶ 3]. Kasaine and his wife, Nzilani Mutanga, allege that they sustained damages.[1] [Doc. 1-1, ¶¶ 7-8].

On February 27, 2023, Plaintiffs filed suit in the 3rd Judicial District Court in Lincoln Parish, Louisiana, asserting negligence claims against Opoku and Opoku's employer, Western Express, Inc. [Doc. 1-1, pp. 1–2]. The matter was timely removed to this Court on July 11, 2023, on the basis of diversity jurisdiction. [Doc. 1].

About two years after filing suit, in January, May, and June of 2025, Kasaine received medical treatment at Epic Pain & Orthopedics ("Epic Pain"), a company based in Dallas, Texas. *See* [Doc. 62-2, pp. 4–5]. Prior to receiving treatment from Epic Pain, Kasaine executed a "Partial Assignment of Benefits and/or Cause(s) of Action & Joint Check Agreement" ("Partial Assignment") with his treating physician, Dr. Christopher Chun. [*Id.,* pp. 5–11]; [Doc. 68-2]. Pursuant to the Partial Assignment, Kasaine:

> [I]rrevocably assign[ed] to Epic Pain[,] … in consideration of deferred billing and collection[,] … any Third-Party liability claims, PIP claims, Uninsured claims and Underinsured claims that cover any claim(s), cause(s) of action, that [Kasaine] ha[s] now or may have in the future for injuries and damages as a result of the accident or incident to the extent of charges for medical services or related goods provided, or for medical services or related goods to be provided by Epic Pain.…

[Doc. 68-2].

After this Partial Assignment was executed, Defendants filed the instant Motion on July 31, 2025, contending that because Kasaine assigned his right to past and future medical expenses to Epic Pain, Kasaine no longer has the legal right to

---

[1] Richard Kasaine's wife, Nzilani Mutanga, has asserted damages for loss of consortium. [Doc. 1-1, ¶ 8].

pursue these claims. [Doc. 62-1, pp. 3–4]. In response, Plaintiffs argue that Kasaine and Dr. Chun have since executed a written "Mutual Revocation of Assignment of Benefits" ("Mutual Revocation") of the Partial Assignment pursuant to a clause in the Partial Assignment that states: "THIS INSTRUCTION IS IRREVOCABLE UNLESS ALL PARTIES AGREE TO OTHERWISE REVOKE IN WRITING." [Doc. 68-1]; [Doc. 68-2]. Defendants' Reply argues that the Partial Assignment was irrevocable, and thus the Mutual Revocation is not permissible. [Doc. 71].

On August 26, 2025, this Court ordered the parties to submit supplemental briefing.[2] [Doc. 72]. In their Supplemental Memorandum, Defendants assert, without authority, that the clause stating the Partial Assignment is irrevocable precludes mutual rescission by Kasaine and Epic Pain. [Doc. 73]. In their Supplemental Opposition, Plaintiffs argue that no Texas case has held that an "irrevocable" clause precludes mutual rescission. [Doc. 74]. And in Defendants' Supplemental Reply, Defendants argue that the plain language of the Partial Assignment's irrevocability clause should be enforced, and rescission should not be permitted. [Doc. 76]. All issues having been briefed by the parties, the Motion is ripe for ruling.

---

[2] This Court ordered supplemental briefing on the issues of: (1) whether parties to an assignment can revoke and/or rescind an assignment that states it is irrevocable; (2) what is the general law that governs assignments in Texas; (3) does the general Texas contract law principle regarding mutual agreement to rescind an agreement apply to assignments; and (4) are there any public policy concerns under either Texas or Louisiana law regarding Plaintiffs' attempted revocation of the assignment while litigation is pending and following the filing of [Doc. 62]. [Doc. 72].

## LAW AND ANALYSIS

**I.      Summary Judgment Standard**

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show[] that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson,* 477 U.S. 242.

The movant bears the burden of demonstrating the absence of a genuine dispute of material fact but need not negate every element of the nonmovant's claim. *Hongo v. Goodwin*, 781 F. App'x 357, 359 (5th Cir. 2019), *citing Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). If the movant meets this burden, the burden then shifts to the nonmovant who is required to "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). However, summary judgment cannot be defeated through "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017), *quoting Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see also Anderson*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The motion for summary judgment should be granted if the non-moving party cannot produce sufficient competent evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005). However, when the relevant facts are undisputed, the court "need only decide whether those undisputed facts ... entitle the movant to judgment as a matter of law." *Flowers v. Deutsche Bank Nat'l Tr. Co.*, 614 F. App'x 214, 215 (5th Cir. 2015).

## II. Choice of Law

Here, the parties contend that Texas law applies to the assignment in question. A federal court sitting in diversity applies the forum state's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Accordingly, this Court must apply Louisiana's choice of law rules, which here is Louisiana Civil Code article 3537.

Under Louisiana Civil Code art. 3537, "[e]xcept as otherwise provided …, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code art. 3537. The Code provides that the following factors are to be considered:

> (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies

> referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.[3]

*Id.* art. 3537.

Here, the assignment at issue was executed and signed in Texas between Epic Pain, a Texas entity, and Kasaine, a Texas resident. [Doc. 68-1]; [Doc. 68-4, ¶ 2]; [Doc. 6]. The assignment concerns Kasaine's right to recover past and future medical expenses arising from a diversity action pending in Louisiana that was brought pursuant to Louisiana law. [Doc. 68-1]; [Doc. 1-1]. Therefore, the location of the object of the contract, *i.e.*, Kasaine's claims for damages, is Louisiana. But the assignment was signed and the services performed in Texas. [Doc. 68-4, ¶¶ 1–2]. Thus, both Louisiana and Texas can claim an interest in their respective laws being applied to this contract.

However, under Louisiana law, "the threshold question in determining a choice of law issue is whether there is a true conflict, a false conflict, or no conflict." *Bilyeu v. Johanson Berenson LLP*, 2010 WL 3896415, at *5 (W.D. La. Sept. 30, 2010) (cleaned up). A false conflict exists when "the result would be the same under either state's law." *Deloach Spray Foam Insulation, LLC v. Briggs & Stratton, Corp.*, 645

---

[3] The policies referred to in Civil Code article 3515 are:

> (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

*Id.* art. 3515.

F.Supp.3d 563, 569 (W.D. La. 2022) (Joseph, J.), *citing Partin v. Dolby*, 652 So.2d 670, 675 (La .App. 1st Cir. 1995).

For false conflicts, "a conflicts analysis is unnecessary[,] and Louisiana law governs by default." *Id.*; *see also Deep South*, 652 F.Supp.3d at 650 ("For example, '[i]f the laws of two states are substantially similar such that they would yield the same resolution of a particular [issue] then there is no conflict and no need for a conflict of laws analysis.'")  As will be explained below, both Louisiana and Texas law yield the same result regarding Kasaine and Epic Pain's purported termination of the Partial Assignment through the Mutual Revocation.  Thus, a false conflict exists, and a conflicts analysis is unnecessary.

### III.    Validity of Assignment

As a preliminary matter, this Court notes the parties do not dispute the facts underlying Defendants' Motion.  Rather, Defendants' Motion presents a purely legal question of contractual interpretation.  Additionally, neither party disputes that a cause of action may be assigned unless it is contrary to public policy.  [Doc. 73, pp. 2–3]; [Doc. 74, p. 2].  Nevertheless, this Court will briefly analyze the assignment at issue for purposes of determining whether a valid mutual rescission has occurred.

Under Texas law, an assignment is "a manifestation to another person by the owner of a right indicating his intention to transfer, without further action or manifestation of intention, his right to such other person or third person."  *Harris Methodist Fort Worth v. Sales Support Servs.*, 426 F.3d 330, 334 (5th Cir. 2005) (applying Texas law).  Only in "limited circumstances" has "the Texas Supreme Court … invalidated otherwise contractually valid assignments on public policy grounds,"

such as "when the assignment: (i) tends to increase or prolong litigation unnecessarily; (ii) tends to distort the litigation process; and (iii) is otherwise inconsistent with the purpose of a statutory cause of action."[4] *See Sw. Airlines Pilots Ass'n v. Boeing Co.*, 704 S.W.3d 832, 847 (Tex. App. 2022). Important here, "[i]t is the well settled rule in Texas that a cause of action for damages resulting from personal injuries may be sold or assigned, in whole or in part, as can any other cause of action except those where assignments thereof are expressly prohibited by statute." *Duke v. Brookshire Grocery Co.*, 568 S.W.2d 470, 472 (Tex. Civ. App. 1978).

Similarly, under Louisiana law, litigious rights are generally assignable if suit has already been filed. *See* La. Civ. Code art. 2652 (discussing the assignment of litigious rights); *see also Woodfield v. Bowman*, 193 F.3d 354, 359–60 (5th Cir. 1999) ("Louisiana law is clear that the express assignment of a cause of action for which suit has been instituted is valid."). If the assignment concerns litigious rights for an already filed personal injury suit, these rights are "real" rights, not "strictly personal" rights, and are therefore heritable and freely assignable. *See* La. Civ. Code. art. 2642 ("All rights may be assigned, with the exception of those pertaining to obligations

---

[4] In applying these guidelines, the Texas Supreme Court has found that the following assignments are invalid because they violate public policy:

> (1) an assignment of a cause of action that works to collude against an insurance carrier; (2) an assignment of a legal malpractice claim; (3) an assignment that creates a Mary Carter agreement; (4) an assignment of the plaintiff's cause of action to a joint tortfeasor of the defendant; (5) an assignment of interests in an estate that distorts the true positions of the beneficiaries; and (6) an assignment of a DTPA cause of action.

*Sw. Airlines Pilots Ass'n v. Boeing Co.*, 704 S.W.3d 832, 847 (Tex. App. 2022), *citing PPG Indus. Inc. v. JMB/Houseton Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 87 n.31 (Tex. 2004).

that are strictly personal."); *see also In re Pembo*, 32 F.3d 566, 1994 WL 442421, at *2 (5th Cir. 1994), *quoting Nathan v. Touro Infirmary*, 512 So.2d 352, 355 (La. 1987) ("When a personal injury victim has instituted suit, he has 'creat[ed] a property right which is heritable.'")

Here, the contractual language, such as "irrevocably assigns," expressly demonstrates the parties' intent for assignment. And because Kasaine's assignment of rights for past and future medical expenses to his doctor has been mutually rescinded or dissolved, as will be explained below, this Court will not determine the validity of the Partial Assignment or whether it violates public policy.[5]

---

[5] This Court has serious concerns about the policy and public health implications of allowing plaintiffs to assign unliquidated personal injury claims to their treating physician or other medical providers. Such an assignment gives the physician a direct financial interest and incentive in the outcome of the assigned tort claim – for which that physician's causation opinion, treatment decisions, billing practices, and testimony pertaining to the plaintiff's injuries are a primary source of the claimed damages. This presents a very real risk of a conflict of interest between a physician's personal pecuniary interest and his or her legal and ethical duties to the Court and his or her patients, including the Hippocratic Oath.

Under Louisiana law, "[a] contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral." *Baker v. Maclay Props. Co.*, 648 So.2d 888, 895 (La. 1995). A contract is against public morals, and may be restricted by the state, if it "'is found to have some deleterious effect on the public or to contravene some other matter of public policy.'" *Rodriguez v. Wyatt*, 102 So.3d 109, 115 (La. App. 5th Cir. 2011), *quoting Family Care Serv., Inc. v. Owens*, 46 So.3d 234, 241 (La. App. 2d Cir. 2010). Other state courts of last resort that have considered the issue of a plaintiff assigning their unliquidated personal injury claims to their medical providers have found that such contracts violate public policy. *See Chiropractic Nutritional Assocs., Inc. v. Empire Blue Cross & Blue Shield*, 669 A.2d 975, 983 (Pa. 1995) (reasoning that "strong public policy generally prohibits assignability of unliquidated personal injury claims to preclude champerty"); *see also Midtown Chiropractic v. Illinois Farmers Ins. Co.*, 847 N.E.2d 942, 945 (Neb. 2006) (finding that patient's assignment of benefits to chiropractor for payment from settlement was unenforceable as assignment of personal injury claim, not just assignment of proceeds of such a claim); *see also CVS Pharmacy, Inc. v. Bostwick*, 494 P.3d 572, 577 (Ariz. 2021) ("Arizona … prohibits assignment of personal injury claims."); *see also A. Unruh Chiropractic Clinic v. De Smet. Inc. Co. of S.D.*, 782 N.W.2d 367, 373–74 (S.D. 2010) (finding that plaintiff's assignment of proceeds of personal injury claims to chiropractic clinic for claim arising from automobile

## IV.    Mutual Agreement to Rescind Contract

Defendants argue that the Partial Assignment specifically states that it cannot be revoked, and it would thus be contrary to the plain meaning of the Partial Assignment to allow for revocation or rescission. [Doc. 73, pp. 7–8]. Plaintiffs respond that, like any contract, an assignment may be rescinded or modified by mutual agreement of the parties. [Doc. 74, pp. 1–2].

Notably, although the document purports to be a "Mutual Revocation," it is actually a mutual "rescission" of a contract, not a revocation – revocation concerns an offer.[6] *See* RESTATEMENT (SECOND) OF CONTRACTS § 283 (1981) ("An agreement of rescission is an agreement under which each party agrees to discharge all of the other party's remaining duties of performance under an existing contract. An agreement of rescission discharges all remaining duties of performance of both parties."); *see also* 14 TEX. JUR. 3D CONTRACTS § 282 (2025) ("The mutual rescission of a contract may result from an express agreement to rescind the contract.... Under Texas law,

---

accident "discouraged settlement and promoted litigation contrary to the law's well-established preference for settlement of disputes").

The Court sees a substantial risk that assignments such as the one here may, at a minimum, "tend[] to increase or prolong litigation unnecessarily" and potentially "distort the litigation process." *See Sw. Airlines Pilots Ass'n*, 704 S.W.3d at 847. Yet, no Louisiana court has squarely addressed the public policy implications of these types of contracts. And because the Partial Assignment has been rescinded, Defendants' Motion is rendered moot, and this Court need not reach this issue.

[6]    Revocation occurs when an offeree's power of acceptance is terminated through the offeror's revocation of the offer. *See* RESTATEMENT (SECOND) OF CONTRACTS § 42 (1982). Here, there was already an existing contract, so revocation is inapplicable because there is no outstanding offer to revoke.

contracting parties may voluntarily agree to enter into a rescission agreement, whereby each party agrees to discharge all of the other party's remaining duties of performance under the existing contract."). Defendants, for their part, confuse a contract containing an offer that cannot be revoked, *i.e.,* the offer is irrevocable, with a contract that cannot be rescinded.[7] And the Partial Assignment's irrevocability is immaterial to whether the Partial Assignment could be mutually rescinded.

Under Texas law, "parties may discharge themselves from their respective duties under a contract by a mutual agreement to rescind their contract." *Moser Co. v. Awalt Indus. Props., Inc.,* 584 S.W.2d 902, 906 (Tex. Civ. App. 1979). And here, Kasaine and Epic Pain unequivocally indicated their intent to mutually rescind their contract through the Mutual Revocation, which operated as a mutual rescission.[8] Therefore, mutual rescission has occurred under Texas law.

Likewise, under Louisiana law, "a contract legally entered into … may be abrogated or revoked by the mutual consent of the parties." *Roberts v. Radalec, Inc.* 64 So.2d 189, 190 (La. 1953), *citing* La. Civ. Code arts. 1901, 1945, 1930; La. Civ.

---

[7]     The bottom portion of the Partial Assignment appears to contain a Limited Power of Attorney. This Power of Attorney states that it "is irrevocable unless all parties agree to otherwise revoke in writing." *See* [Doc. 68-1] (cleaned up). Here, because the Mutual Revocation was in writing and signed by both Kasaine and Epic Pain, the Mutual Revocation also served to rescind (or dissolve) the Limited Power of Attorney. *See* [Doc. 68-2].

[8]     The relevant rescission language from the Mutual Revocation is as follows:

> The parties expressly acknowledge and agree this this Revocation fully and finally terminates the Assignment of Benefits … and that neither party shall have any continuing rights or obligations under that Assignment.

[Doc. 68-2].

Code art. 1983 ("Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law."); *see also Allan v. Arnold*, 673 F.2d 767, 770 n.3 (5th Cir. 1982), *quoting Watson v. Haik* 292 So.2d 173, 174 (La. App. 1st Cir. 1980) ("Our conclusion is based upon settled Louisiana law. 'A written contract may be modified or nullified by mutual consent of the parties.'")

The termination of a contract's existence through the parties' mutual consent is referred to as dissolution under Louisiana law, but its effects are the same as rescission. *See* ALAIN A. LEVASSEUR & NIKOLAOS A. DAVRADOS, LOUISIANA LAW OF CONTRACTS AND QUASI-CONTRACTS, A PRÉCIS 142 (2024) ("Words such as 'termination,' 'extinction,' or 'rescission' are also often used in the place of 'dissolution' to mean the same thing as dissolution."). The Mutual Revocation clearly indicates Kasaine and Epic Pain's intent to dissolve the Partial Assignment. *See supra* note 8. Accordingly, dissolution has occurred under Louisiana law.

Here, because either mutual rescission or dissolution has occurred, Kasaine and Epic Pain are restored to the *status quo ante*, as if the Partial Assignment never occurred. *See U.S. v. Texarkana Trawlers*, 846 F.2d 297, 304 (5th Cir. 1988) ("Rescission … attempts to restore the parties to the rescinded contract to the *status quo* that existed before the contract was formed.") (emphasis in original); *see also* ALAIN A. LEVASSEUR & NIKOLAOS A. DAVRADOS, *supra*, at 148 ("The effect of dissolution between the parties … is that the parties must be returned to the situation they were in before the contract was entered into. To state the principle otherwise, the parties must be returned to the *status quo ante*."); *Status quo ante*,

BLACK'S LAW DICTIONARY (12th ed. 2024) ("The situation that existed before something else (being discussed) occurred."). Thus, the Mutual Revocation operated to terminate the Partial Assignment between Kasaine and Epic Pain under both Texas and Louisiana law. Therefore, as discussed above, the same outcome – the Partial Assignment's termination – results under both Texas and Louisiana law.

Lastly, Defendants take issue with the fact that Kasaine and Epic Pain's mutual rescission occurred after Defendants filed their Motion for Summary Judgment. *See* [Doc. 73, pp. 8–10]. But Defendants are unable to point this Court to authority suggesting that Louisiana or Texas public policy prohibits a mutual agreement to rescind a contract after a motion for summary judgment has been filed. *See generally* [Docs. 71, 73, 76]. And in its own independent research, this Court is unable to find precedent finding such a mutual rescission violates public policy.[9] Accordingly, this Court finds that Defendants' Motion is moot because the assignment at issue was terminated through Kasaine and Epic Pain's mutual rescission.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendants' Motion for Summary Judgment is moot such that an entry of summary judgment is not proper.

Accordingly,

IT IS HEREBY ORDERED that Defendants' MOTION FOR SUMMARY JUDGMENT [Doc. 62] is DENIED.

---

[9]  Additionally, under Texas law, there is a presumption against finding a contract violates public policy. *See McKenzie v. Carte*, 385 S.W.2d 520, 529 (Tex. Civ. App. 1964), *citing Lewis v. Davis*, 199 S.W.2d 146 (Tex. 1947) ("There is never a presumption of illegality, but on the contrary, there will be a presumption of legality.").

THUS, DONE AND SIGNED in Chambers on this 21st day of November 2025.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE